*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-2041**

Thomas M. Fafinski,
Respondent,

vs.

Jaren Johnson,
Appellant.

**Filed August 15, 2016
Affirmed
Smith, Tracy M., Judge**

Dakota County District Court
File No. 19HA-CV-14-4686

Nathan W. Nelson, Steven V. Rose, Virtus Law, PLLC, Brooklyn Park, Minnesota (for respondent)

Jaren L. Johnson, Johnson Law Office, PLLC, Edina, Minnesota (attorney pro se)

Considered and decided by Reilly, Presiding Judge; Smith, Tracy M., Judge; and Klaphake, Judge.*

**U N P U B L I S H E D   O P I N I O N**

**SMITH, TRACY M.**, Judge

On appeal from default and attorney-fee judgments against him, appellant Jaren Johnson argues that the district court erred by (1) entering default judgment against him

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

when he had "otherwise defended" and (2) granting respondent Thomas M. Fafinski's request for attorney fees when the court did not cite to any facts supporting its conclusion that he "repeatedly asserted positions that were non-meritorious and brought to cause unnecessary delay." Because the record supports the findings "that Johnson's overall course of conduct suggests intentional delay and a disregard for procedural rules" and that Johnson "acted in bad faith and engaged in vexatious litigation," we affirm.

## FACTS

In 2005, Fafinski sold his law firm to Johnson. Fafinski continued to work for the firm as an employee until January 2010. In 2010, Fafinski sued the firm and Johnson personally, alleging that the firm had failed and refused to pay him money he had earned as an employee and as a minority shareholder of the firm. From 2011 through 2013, the district court entered several judgments in favor of Fafinski and against the firm and Johnson.[1]

According to Fafinski, he "under[took] significant efforts to collect" on these judgments, including serving requests for production of documents and seeking deposition testimony from Johnson. In March 2014, after being ordered by the court, the firm and Johnson provided Fafinski with their 2007 to 2012 tax returns.[2] Based on the information that was provided in these tax returns, Fafinski discovered that the firm and Johnson had

---

[1] These judgments included sanctions against the firm and Johnson, in the form of attorney fees to Fafinski, because the firm and Johnson did not comply with Fafinski's discovery requests.

[2] Fafinski did not receive complete tax returns for 2007, 2009, and 2012 until April 2015.

transferred assets from 2007 to 2010 and that Johnson had directed the firm to make two transfers, totaling over one-half million dollars, to him in 2011 and 2012.

In November 2014, Fafinski sued Johnson personally, alleging, among other things, that the transfers made by the firm to Johnson were fraudulent under Minnesota's Uniform Fraudulent Transfer Act. *See* Minn. Stat. §§ 513.41-.51 (2014).[3] In December 2014, in lieu of an answer, Johnson filed a motion to dismiss Fafinski's complaint. In March 2015, shortly after Fafinski filed a motion for summary judgment, Johnson filed an amended motion to dismiss and scheduled the motion to be heard on April 27. Johnson also sought sanctions against Fafinski and Fafinski's attorneys under Minn. R. Civ. P. 11. After a hearing, the district court denied Johnson's motion to dismiss, and Johnson filed a motion for summary judgment that same day. The district court also denied Johnson's motion for rule 11 sanctions.

On June 4, the district court heard the parties' cross motions for summary judgment. At the hearing, Fafinski's counsel informed the district court that Johnson had failed to answer the complaint. After Johnson explained that he had forgotten to submit an answer following the denial of his motion to dismiss, Fafinski's counsel asked the district court to find Johnson in default and enter judgment in favor of Fafinski. The district court denied this request. Immediately following the hearing, Johnson filed an answer. The answer had

---

[3] "In 2015, the Minnesota Uniform Fraudulent Transfer Act was amended to the Minnesota Uniform Voidable Transactions Act." *Landmark Cmty. Bank, N.A. v. Klingelhutz*, 874 N.W.2d 446, 448 n.1 (Minn. App. 2016) (citing Minn. Stat. §§ 513-.41-.51 (Supp. 2015)), *review denied* (Minn. Apr. 27, 2016). Because the effective date and application of the amendments do not apply to a transfer made before August 1, 2015, the amended statute does not apply to this case. *Id.* (citing 2015 Minn. Laws, ch. 17, § 13).

several defects. First, the answer purported to preserve affirmative defenses pending completion of discovery when discovery had closed in May 2015. Second, it asserted the affirmative defenses of res judicata and collateral estoppel, which had already been raised and denied in the motion to dismiss. Finally, the answer made several averments on behalf of "Plaintiff."

On June 12, Fafinski's counsel wrote a letter to Johnson objecting to the answer as untimely and procedurally improper under Minn. R. Gen. Pract. 109. The letter directed Johnson that, under rule 109, he was required to seek leave from the district court to submit a late answer and must also submit an affidavit of merit. The letter also stated that Fafinski would move to strike the answer if it was not withdrawn by June 16. On June 16, Johnson filed an affidavit of merit, together with a motion for leave to file an answer. Johnson did not include notice of a hearing for the motion, but instead asked the district court to rule without a hearing. On June 25, Fafinski's counsel filed a letter with the district court objecting to Johnson's motion for leave to file an answer without a hearing because, under Minn. R. Gen. Pract. 115.04, a hearing is required.

On July 1, each party's motion for summary judgment was denied. In its order denying the motions, the district court instructed Johnson to schedule a hearing for his motion for leave to file an answer if he wanted the motion to be considered. Three weeks later, on July 24, Johnson filed an amended motion for leave to file an answer and scheduled the motion to be heard on August 11. On August 4, Fafinski filed a memorandum opposing Johnson's motion, arguing that Johnson's motion and answer were defective.

4

On August 10, one day before the hearing, Johnson filed an amended affidavit of merit with an amended answer attached. Johnson also attached bank statements that had not previously been disclosed. The amended answer remedied the clerical errors in the original answer regarding averments on behalf of "Plaintiff" and removed all affirmative defenses and the statement reserving such defenses pending discovery. In his amended affidavit of merit, Johnson stated that he did "not recall ever having brought a Rule 12 Motion to Dismiss and [he] was unfamiliar with the rules applicable to answering after a ruling on the motion was made." He also stated that he failed to answer the complaint because he was focused on "other motions in process in this case." Fafinski's counsel objected to the amended affidavit of merit, the amended answer, and the bank statements as being untimely filed.

After the hearing, the district court denied Johnson's motion for leave to file an answer and struck the trial from the court's calendar. In its order, the district court, applying the factors for relief from default judgment, *see Finden v. Klaas*, 268 Minn. 268, 271, 128 N.W.2d 748, 750 (1964), concluded that Johnson had failed to establish excusable neglect. With respect to two of the factors, the district court concluded that Johnson—a practicing lawyer—had no reasonable excuse for his failure to timely answer and had not acted with due diligence, stating "[i]t is the opinion of this [c]ourt that Johnson's overall course of conduct suggests intentional delay and a disregard for procedural rules." The district court's order stated that Fafinski may "mak[e] an application for a default hearing."

Fafinski moved for default judgment against Johnson, and, following a hearing, the district court entered default judgment in the amount of $39,083. In its order, the district

5

court stated that its "prior order denying [Johnson's motion for leave to file an answer] effectively put [Johnson] in default for 'failing to plead or otherwise defend' within the time allowed" and explained that "[t]his [c]ourt has already established—based upon the '*Finden*' factors—that [Johnson's] failure to answer the [c]omplaint was not due to excusable neglect." Fafinski also filed a motion for attorney fees, based on Johnson's conduct in the current action, and the district court awarded Fafinski $40,000 in fees.

Johnson appeals.

## D E C I S I O N

### I.

Johnson argues that the district court abused its discretion by granting default judgment against him because he had "otherwise defended" within the meaning of Minn. R. Civ. P. 55.01 by making various filings in the case, including "a Rule 12 Motion to Dismiss, a Motion for Rule 11 Sanctions, a Motion for Summary Judgment, a Joint Statement of the Case, and Motions in Limine," and by participating in discovery.

The decision whether to grant or deny a motion for a default judgment lies within the discretion of the district court, and we will not reverse it absent an abuse of that discretion. *Black v. Rimmer,* 700 N.W.2d 521, 525 (Minn. App. 2005), *review dismissed* (Minn. Sept. 28, 2005). Minn. R. Civ. P. 55.01 states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend within the

time allowed therefor by these rules or by statute, and that fact is made to appear by affidavit, judgment by default shall be entered against that party."[4]

In *Black*, we interpreted the phrase "otherwise defend" in rule 55.01 by looking to federal caselaw interpreting Fed. R. Civ. P. 55(a). 700 N.W.2d at 525-26; *see DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997) (using United States Supreme Court's interpretation of federal rules of procedure to provide guidance on interpretation of parallel state rules of procedure). We stated that "[u]nder the federal rules, 'otherwise defend' has long referred to 'attacks on the service, or motions to dismiss, or for better particulars, and the like, which may prevent default without presently pleading to the merits.'" *Black*, 700 N.W.2d at 526 (quoting *Bass v. Hoagland*, 172 F.2d 205, 210 (5th Cir. 1949)). We held that, "[t]o successfully defend against a default judgment, a party who has failed to plead and contends that he or she has 'otherwise defended' within the meaning of Minn. R. Civ. P. 55.01, must, at a minimum, have made a rule 12 or other defensive motion." *Id.* at 524.

Johnson made defensive motions, thus satisfying the minimum requirement identified in *Black*, but the district court nevertheless concluded that he failed to defend. The parties have not cited, and our research has not found, any Minnesota case addressing

---

[4] A district court should deny a motion for default judgment when the defendant has established the following four factors: (1) a reasonable defense on the merits; (2) a reasonable excuse for the failure to act; (3) action with due diligence after the entry of judgment; and (4) lack of prejudice to the opposing party. *Coller v. Guardian Angels Roman Catholic Church of Chaska*, 294 N.W.2d 712, 715 (Minn. 1980); *see also Finden*, 268 Minn. at 271, 128 N.W.2d at 750. Johnson does not argue in his brief that the district court erred in its application of the *Finden* factors; therefore, this issue need not be considered. *See Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (stating that issues not briefed on appeal need not be considered).

whether a party can be found to have failed to defend under rule 55.01 by virtue of the party's conduct after pleading or making a defensive motion. Federal courts, however, have addressed the issue, and we find the Eighth Circuit caselaw persuasive. The Eighth Circuit has stated that "[d]efault judgment for failure to defend is appropriate when the party's conduct includes 'willful violations of court rules, contumacious conduct, or intentional delays.'" *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996) (quoting *United States v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993); *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129-30 (2d Cir. 2011) (affirming entry of default judgment under rule 55(a) against defendants who answered plaintiff's complaint, appeared in litigation for several years, and moved to dismiss multiple times, but subsequently failed to defend).

The record shows that Johnson engaged in "willful violations of court rules, contumacious conduct, or intentional delays." *See Ackra*, 86 F.3d at 856 (quotation omitted). Johnson, a veteran attorney, failed to file an answer within ten days after his motion to dismiss was denied. *See* Minn. R. Civ. P. 12.01 (stating that "[i]f the court denies [a motion to dismiss] . . . the responsive pleading shall be served within 10 days after service of notice of the court's action"). He only submitted an answer after Fafinski informed him that he had failed to do so. When he did file his answer, it contained clerical errors, purported to assert affirmative defenses that had already been denied in the court's denial of his motion to dismiss, and reserved the right to assert affirmative defenses pending discovery when the time for discovery had already passed. Prior to submitting his answer, Johnson failed to move for leave to file an untimely answer as required by Minn.

8

R. Gen. Pract. 109, and only did so after being warned by Fafinski's counsel that Fafinski would move to strike if Johnson did not file a motion and include the required affidavit of merit. Johnson then moved for leave to file an answer, but did not request a hearing as contemplated by Minn. R. Gen. Pract. 115.04. Johnson only scheduled a hearing three weeks after the district court directed him to do so. After briefing on the motion was complete, and just one day before the scheduled hearing, Johnson made untimely filings of an amended answer, an amended affidavit, and previously undisclosed bank statements. This record supports the district court's conclusion "that Johnson's overall course of conduct suggests intentional delay and a disregard for procedural rules" and demonstrates a failure to defend. The district court did not abuse its discretion by entering default judgment against Johnson.

## II.

Johnson argues that the district court abused its discretion by granting Fafinski's request for attorney fees, because "[t]here was no citation to any facts supporting the holding that [Johnson] repeatedly asserted positions that were non-meritorious or brought to cause unnecessary delay." We will not reverse a district court's award of attorney fees unless the district court abused its discretion by making the award. *Becker v. Alloy Hardfacing & Eng'g Co.*, 401 N.W.2d 655, 661 (Minn. 1987).

The district court has the authority to impose sanctions, including attorney fees, under statute and as part of its inherent power. *Peterson v. 2004 Ford Crown Victoria*, 792 N.W.2d 454, 462 (Minn. App. 2010). "Attorney fees may be an appropriate sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.*

9

(quotation omitted). To award attorney fees under its inherent power, the district court must find that the party against whom fees were awarded acted in bad faith. *Id.*

In granting Fafinski's motion for attorney fees, the district court found that Johnson had "acted in bad faith and engaged in vexatious litigation." It further found that Johnson "repeatedly asserted positions that were non-meritorious and brought to cause unnecessary delay even after [j]udgment had been entered." The district court explained that "[t]he inherent authority of the court allows the award of attorney fees as a sanction."

The record supports the district court's finding that Johnson "acted in bad faith and engaged in vexatious litigation." As stated above, Johnson, a veteran attorney, failed to submit a timely answer after his motion to dismiss was denied. He filed an answer only when Fafinski's counsel brought the failure to his attention. The answer he filed contained numerous errors. Johnson filed the untimely answer without seeking leave to do so, as required by the rules. He only brought the motion for leave to file when warned by Fafinski's counsel that it was required, and even then he did not appropriately request a hearing. Johnson finally scheduled a hearing when directed to do so by the district court, and then, one day before the hearing and one month before trial was scheduled to begin, untimely submitted an amended answer, amended affidavit of merit, and previously undisclosed bank statements. Further, the record supports the district court's finding that "[Johnson] repeatedly asserted positions that were non-meritorious and brought to cause unnecessary delay even after [j]udgment had been entered." Although the district court had already rejected Johnson's argument that Fafinski's claims were barred by the doctrines of res judicata and collateral estoppel in its order denying Johnson's motion to

10

dismiss, in his memorandum of law in opposition to Fafinski's motion for attorney fees Johnson again suggested that Fafinski's claims were barred by the doctrines of res judicata and collateral estoppel.  The district court did not abuse its discretion by awarding attorney fees to Fafinski.

**Affirmed.**